IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6014-CIV SEITZ/Garber

WILLIAM H. COYLE,

        Plaintiff,

vs.

SECRETARY, DONNA SHALALA,
DEPARTMENT OF HEALTH AND
HUMAN SERVICES, AND UNITED STATES,

        Defendants.
_____/

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

On January 5, 2000, the Plaintiff filed this complaint *pro se* against the Defendant, Donna Shalala, Secretary of the U. S. Department of Health and Human Services (DHHS), (hereafter "Secretary"). On March 16, 2000, the Plaintiff filed an amended complaint. Copies were received via certified mail by the United States Attorneys Office for the Southern District of Florida and by the Secretary on March 29, 2000 and May 5, 2000, respectively.

In his Amended Complaint, Plaintiff contends that the Secretary violated his rights under the "5th Amendment of the Constitution for the United States, under USC 42 1983, USC 2000, title 5 701 of the Administrative Procedure Act (APA)." He invokes jurisdiction pursuant to "USC Title 28 1331 and/or USC 28 1343." Plaintiff's Amended Complaint.

In essence, plaintiff appears to allege that the Secretary violated and continues to violate various federal laws and that his due process rights were infringed upon when the Secretary concluded, after an investigation, that Broward General Hospital had not violated any provision of

the "federal COBRA [1] law." Plaintiff's Amended Complaint ¶¶ 4, 11, 12,14, 15,16, 17, 18, 19, 20, 21. However, as will be set forth, the Secretary asserts that Plaintiff is unable to establish either factually or legally, the validity of any of his allegations.

## STATEMENT OF FACTS

In June 1995, Plaintiff filed a complaint against the health care provider, Broward General Hospital with the Florida Agency for Health Care Administration (FAHCA), pursuant to EMTALA. The Plaintiff does not specify how the hospital's actions violated EMTALA. Plaintiff's Amended Complaint,¶ 3. His complaint was investigated by FAHCA pursuant to authorization from the Health Care Financing Administration (HCFA), the DHHS component to which the Secretary has delegated regulatory authority for EMTALA compliance. Plaintiff's Amended Complaint.¶ 4. Over the course

---

[1] COBRA refers to the Consolidated Omnibus Budget Reconciliation Act of 1986. COBRA contains provisions known as the Emergency Treatment and Active Labor Act (EMTALA), commonly referred to as the "Patient Anti-Dumping Act." EMTALA is a provision of and part of the Medicare Act. 42 U.S.C. § 1395 *et seq.*; 42 U.S.C. § 1395dd. EMTALA was enacted to prevent "patient dumping" which was a practice in which hospitals transferred patients who could not pay to other facilities for treatment. Often this was done without examining the patient or attempting to stabilize the medical condition when the patient came to the emergency room. COBRA or EMTALA requires all hospitals with emergency departments which participate in the Medicare program to provide at the minimum, an "appropriate medical screening" to determine if an "emergency medical condition" exists and if so, to stabilize the patient prior to transfer if the patient is in need of medical care that cannot be provided by the current facility.
  If a hospital violates this provision, three types of remedies may apply. First, HCFA may terminate provider agreements pursuant to 42 C.F.R. § 489.53. Second, the Office of the Inspector General may impose civil monetary penalties against the hospital and the physician pursuant to   42 C.F.R.§ 1003.100(b)(vi). Third, any **individual** who suffers "personal harm" as a direct result of the participating hospital's **violation** of this provision "may, in a civil action **against the participating hospital**, obtain damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." This section also provides that any medical facility that suffers a financial loss as a direct result of a participating hospital's violation of EMTALA may in a civil action, obtain damages available for financial loss . . . *and such equitable relief as appropriate.* 42 U.S.C.A. §1395dd (d)(2)(A),(B) and (C) (emphasis added).

2

of several years, Plaintiff and the Secretary corresponded relative to his complaint. Plaintiff's Amended Complaint,¶ ¶ 5, 10 and 13. As noted by Plaintiff, the HCFA notified the Plaintiff on January 6, 1996 and again on October 28, 1999, of the outcome of the investigation and that further review was unwarranted. Plaintiff's Amended Complaint, ¶ 13; Secretary's Answer to Plaintiff's Amended Complaint; Secretary's Authenticated Copies of Correspondence to Plaintiff (attached). Plaintiff filed the instant action on January 5, 2000.

## ARGUMENT

As set forth in fn. 1, the requirements of EMTALA are fairly clear, as are the regulations implementing them 42 C.F.R. § 489.24. To the extent that the Plaintiff seeks to have the Secretary's determination of Broward Hospital's compliance with EMTALA reviewed by this court, the Secretary will set forth in detail below that Plaintiff has no standing; the court lacks subject matter jurisdiction of this matter; the statute of limitations has run on any type of civil action which Plaintiff may have had arising under EMTALA; and Plaintiff has failed to state a claim upon which relief can be granted.

### a. The Plaintiff Lacks Standing

The provisions of EMTALA impose on Medicare participating hospitals with emergency departments certain obligations, discussed above, for the screening, stabilization or transfer of individuals presenting with emergency medical conditions. The failure of a participating hospital to fulfill these obligations exposes the hospital to three types of legal liability: termination of its Medicare provider agreement by HCFA, 42 CFR §489.53(b); the imposition of a civil money penalty by the Office of Inspector General, 42 CFR §1003.100(b)(vi); and liability in tort to a person or persons, or other hospital, injured by the hospital's violation, 42 U.S.C. 1395dd(d)(2). In the present case,

3

an individual who alleges a hospital violated its EMTALA obligations in its care of him is not pursuing the civil cause of action under §1395dd(d)(2), but instead has brought an action against the Secretary, challenging on various grounds the Secretary's determination, after an investigation, under the Medicare Act that the hospital's provider agreement should not be terminated because it did not violate EMTALA.

Such actions as this by beneficiaries seeking to overturn the Secretary's determination of a Medicare provider's compliance with Medicare program requirements have been found by the Supreme Court to be improper. In **O'Bannon v. Town Court Nursing Center**, 447 U.S. 773 (1980), Medicaid beneficiaries sought to challenge the termination of the Medicare and Medicaid Provider Agreements of the nursing home where they resided.

> This case...involves the government's attempt to confer an indirect benefit on Medicaid patients by imposing and enforcing minimum standards of care on facilities...When enforcement of those standards requires decertification, there may be an adverse impact on some residents. But surely, that impact, which is an indirect and incidental result of the Government's enforcement action does not amount to a deprivation of any interest in life, liberty or property. Town Court, 447 U.S. 773 at 787.

This principle of conferring an "indirect benefit" on any patient who presents at a Medicare participating hospital is evident from the plain language of the EMTALA and by cases construing its contours. It is well settled in most circuits that the only proper defendant of a private EMTALA action is a hospital. There is no private cause of action against a physician, physician's clinic or medical corporation. See, **Eberhardt v. City of Los Angeles**, 62 F.3d 11253; (9th Cir.1995); **King v. Ahrens**, 16 F.3d. 265, 271 (8th Cir.1994); Delaney v. Cade, 986 F.2d 387, 393 (10th Cir. 1993). **Baber v. Hospital Corp of America**, 977 F.2d 872, 877 (4th Cir. 1992); **Gatewood v. Washington Healthcare Corp.**, 933 F.2d 1037, 1040 n.1 (D.C.Cir. 1991).

4

Of particular note is the case of **Deberry v. Sherman Hospital Association**, 775 F. Supp. 1159 (N.D. Ill. 1991). In addition to suing the hospital pursuant to the provisions of EMTALA, Deberry attempted to argue that she should be able to terminate the hospital's Medicare participation due to the hospital's alleged negligence in treating her daughter. The court, noting that it was a case of first impression, opined that "the language of the statute indicates that the sanction of terminating a violating hospital's provider agreement is to be imposed at the initiative of the Secretary of Health and Human Services." **Deberry**, *supra* at 1162.

Plaintiff's actions and allegations in the instant case are tantamount to an attempt to terminate Broward's provider agreement despite the Secretary's determination that the hospital had not violated any provisions of EMTALA. There is no provision in the EMTALA which gives the plaintiff any right beyond that which has been set forth by statute. The Plaintiff here does not have standing to litigate the propriety of the Government's determination of the hospital's compliance with program participation requirements.

### b. There is No Subject Matter Jurisdiction

Plaintiff alleges that his causes of action arise under the Fifth Amendment to the Constitution, 42 U.S.C. §1983, 42 U.S.C. §2000 and the Administrative Procedure Act (APA), and he asserts the court has subject matter jurisdiction of those claims under 28 U.S.C. §1331, which provides general Federal question jurisdiction, and 28 U.S.C. §1343 which provides jurisdiction of certain civil rights actions.

This Court lacks subject matter jurisdiction, because all counts of the Complaint "arise under" the Medicare Act. The sole basis for subject matter jurisdiction of disputes concerning determinations whether a provider *is in compliance* with the requirements for participation is afforded by 42 U.S.C.

5

§405(g), as incorporated into the Medicare Act by 42 U.S.C. §1395ii, and specifically, as to provider agreement termination actions, by §1395cc(h)(1).

The Medicare Act clearly sets forth a carefully detailed and exclusive method for obtaining administrative and judicial review of challenges arising under the Act. It accomplishes this intent by precluding federal court jurisdiction of Medicare cases, except where the Medicare Act expressly grants jurisdiction. The "sweeping and direct" language of 42 U.S.C. §405(h), incorporated into the Medicare Act by 42 U.S.C. §1395ii, states that "no action... shall be brought under [28 U.S.C.] §1331...to recover on any claim arising under this title." **Weinberger v. Salfi**, 422 U.S. 749 at 757 (1975). The Court in **Salfi** made clear too that §405(h) precludes resort to federal question jurisdiction even with respect to the adjudication of constitutional claims, which must be "brought under jurisdictional grants contained in the Act, and thus in conformity with the same standards which are applicable to nonconstitutional claims arising under the Act." Id. at 762.

The jurisdictional grants, contained in the Act for reviewing the Secretary's actions terminating provider agreements, are found in 42 U.S.C. §1395cc(h)(1), which also incorporates the statutes addressed in **Salfi**, 42 U.S.C. §405(b) and (g). The former sets forth the facility's administrative remedy while the latter authorizes judicial review of the Secretary's decision only after a "final decision of the Secretary" has been obtained:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of he amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow...
> 42 U.S.C. §405(g)

The exhaustion requirement of §405(g), obtaining "a final decision of the Secretary made after a hearing," is thus a prerequisite to the exercise of jurisdiction by federal courts. **Salfi**, 422 U.S. at

6

764,765. Plaintiff in this case is barred from bringing suit against the Secretary directly challenging the Secretary's decision in regard to the hospital because the limited avenue for obtaining judicial review of a decision of the Secretary's regarding a provider's participation, a final decision after a hearing, is available only to the provider directly affected. See, 42 U.S.C. §1395cc(h)(1); 42 CFR §498.3(b)(7). A private individual, even one who may have been affected by the provider's care, is not entitled to a hearing on the Secretary's determination of the provider's compliance with Medicare requirements. See, **Town Center**, *supra.*

However, as discussed above, an individual who suffers personal harm as a direct result of a participating hospital's violation of an EMTALA requirement, is not left without a remedy. The statutory scheme provides to that individual as an avenue of redress, not an action against the Secretary, but instead a civil enforcement action against the hospital. 42 U.S.C. §1395dd(d)(2)(A).

Plaintiff's inability to satisfy the prerequisites of §405(g), results in the bar of §405(h) precluding district court jurisdiction of his action, for the bar is broadly encompassing of causes of action. **Salfi** for example was a class action suit attacking the constitutional validity of a statutory provision which created for certain relatives of a wage-earner a "duration of relationship" requirement for claiming Social Security payments. Plaintiffs sought declaratory and injunctive relief. The Court rejected Plaintiffs' argument that their action arose under the constitution and not the Social Security Act and was thus not precluded by §405(h):

> It would of course be fruitless to contend that appellees' claim is one which does not arise under the Constitution, since their constitutional arguments are critical to their complaint. But it is just as fruitless to argue that this action does not also arise under the Social Security Act. For not only is it Social Security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions...To contend that such an action does not arise under the Act whose benefits are sought

7

> is to ignore both the language and the substance of the complaint and judgement. This being so, the third sentence of §405(h) precludes resort to federal-question jurisdiction for the adjudication of appellees' constitutional contentions.

**Id.** at 761-762.

***

> It [the language of §405(h)] is not limited to decisions of the Secretary on issues of law or fact. Rather, it extends to any "action" seeking to recover on any (Social Security) claim"--irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his nondiscretionary application of allegedly unconstitutional statutory restrictions.

**Id.** at 763.

The Supreme Court held that the district court lacked subject matter jurisdiction over the unnamed members of the class under §405(g) because they failed to initiate the administrative process much less receive a final decision. 422 U.S. at 765. The Court upheld the lower court's exercise of jurisdiction over the named Plaintiffs whose allegation of the exhaustion of administrative remedies had not been challenged by the Secretary, 422 U.S. at 768.

The jurisdictional bar governing Medicare related lawsuits was reaffirmed and further illuminated by the Supreme Court in **Heckler v. Ringer**, 466 U.S. 602 (1984), a case whose facts are strikingly similar to those alleged in Plaintiff's complaint. In **Ringer**, four Medicare beneficiaries challenged a Part A Medicare policy denying coverage nationwide for a particular surgical procedure. The **Ringer** plaintiffs asserted that a binding ruling of the Secretary that prohibited payment for the surgery violated the Medicare Act, was "arbitrary and capricious", violated the rulemaking requirements under the Administrative Procedure Act ("APA"), and violated the due process clause of the fifth amendment. 466 U.S. at 610, n. 7. The **Ringer** claimants sought only declaratory and injunctive

8

relief, including invalidation of the Secretary's ruling and an order enjoining its application.

The Supreme Court held that "the standing and the substance" of the claimants' allegations were "inextricably intertwined" with claims "aris[ing] under" the Medicare Act within the meaning of section 405(h) and, thus, the claims could only be reviewed under section 405(g). **Ringer**, 466 U.S. at 622-24. The Court held further that the jurisdictional preclusion applies regardless of whether the claim allegedly arises under the Constitution or the APA, and regardless of whether a claimant seeks only declaratory and injunctive relief or specifically seeks an award of benefits. **Id.** Since "all aspects" of a claim must "be channeled first into the administrative process which Congress has provided for the determination of claims for benefits," the nature of the claim presented is irrelevant to the determination of whether federal question jurisdiction exists where judicial review is otherwise available. **Id.** at 614. See also, e.g., **Good Samaritan Medical Ctr. v. Secretary of Health and Human Serv.**, 776 F.2d 595, 597-98 (6th Cir. 1985) (hospitals' claim that Medicare reimbursement system violates equal protection "arises under" the Medicare Act); **Gruter Foundation, Inc. v. Bowen**, 652 F. Supp. 245, 249-50 (N.D. Ohio, 1986) (nursing home's due process challenge to administrative process for appealing termination of Medicaid provider agreement "arises under" the Social Security Act) See, also, **Shalala v. Illinois Council on Long Term Care, Inc.**, 120 S.Ct. 1084 (2000) (reaffirming that Section 405(h), as incorporated by § 1395ii, barred federal-question jurisdiction).

Plaintiff in this case is barred from bringing suit against the Secretary directly challenging her decision in regard to the hospital because the limited avenue for obtaining judicial review of a decision of the Secretary's regarding a provider's participation, a final decision after a hearing, is available only to the provider directly affected. See, 42 U.S.C. §1395cc(h)(1); 42 CFR §498.3(b)(7).

Plaintiff's involvement in this matter is entirely incidental as the Secretary exercises no regulatory authority over Plaintiff or confers any direct benefits upon him. In fact, the investigation of the hospital's compliance could have been initiated by any number of events other than plaintiff's complaint. The receiving hospital of an inappropriately transferred patient is obliged to report such activity to HCFA pursuant to their Medicare provider agreement 42 C.F.R. § 489.20. The EMTALA and its implementing regulations also anticipate that violations will be reported by medical personnel and thus, whistle blower protection was provided. 42 U.S.C. § 1395dd(i); 42 C.F.R. § 489.24(d)(3). After providing the impetus for an investigation, it appears clear from the statutory scheme that Congress intended for the Secretary to regulate and sanction, if necessary, any facilities which she determined had violated provisions of the EMTALA. In keeping with Ringer, it is clear that there is no subject matter jurisdiction under the Medicare Act.

### d. The Statute of limitations has run

The case should also be dismissed due to the fact that the statute of limitations has run on any claim Plaintiff may have had. Specifically, EMTALA provides that, "[n]o action may be brought under this paragraph [civil enforcement] more than two years after the date of the violation with respect to which the action is sought." 42 U.S.C. § 1395dd(d)(2)(C). Clearly the only acts which relate in any way to plaintiff's lawsuit arose out of his visit to the hospital emergency department, his subsequent complaint concerning his treatment there and the Secretary's determination of the hospital's compliance, with which Plaintiff appears to disagree.

His alleged causes of action arise solely out of the EMTALA. Assuming *arguendo*, that Plaintiff could bring a civil action against the Secretary pursuant to EMTALA, its statute of limitations provisions, applicable to any private causes of action governing Plaintiff's suit, bars this

10

Case 0:00-cv-06014-PAS   Document 21   Entered on FLSD Docket 08/01/2000   Page 11 of 15

action.

### e. Failure to state a claim for which relief can be granted

The other causes of action asserted by Plaintiff are without merit, notwithstanding the lack of subject matter jurisdiction. In Plaintiff's constitutional claim under the 5th Amendment, other than bare assertion, not one fact is alleged that would provide even the remotest showing that Plaintiff had a legally protected life, property or liberty interest upon which the Secretary unlawfully infringed.

The Secretary notes also that 42 U.S.C. § 1983 prohibits "state action" which violates an individual's rights, and therefore cannot lie against the federal government. See, **International Islamic Community of Masjid Baytulkhaliq, Inc. v. U.S.**, 981 F. Supp. 352 (D. Virgin Islands 1997); **Osorio v. Veterans Administration**, 514 F. Supp. 94 (D. Puerto Rico 1981); **American Science & Engineering v. Califano**, 571 F.2d 58 (1st Cir. 1978). The Secretary is the head of a federal agency which operates pursuant to federal law, and is the only defendant in this action. Thus, Plaintiff fails to state valid claim against the Secretary and §1983 confers no jurisdiction on the court for consideration of this matter.

Plaintiff also alleges that the Secretary violated his civil rights under 42 U.S.C. § 2000a. Plaintiff's Amended Complaint, Count 1. This provision applies to "discrimination based upon race, color, religion or national origin in places of public accommodation." Plaintiff has not alleged any facts which establish that the Secretary operates a place of public accommodation wherein he was discriminated against by her based upon his status as a member of the class of persons the Civil Rights Act was designed to protect. Because Plaintiff fails to state a claim pursuant to 42 U.S.C. §§ 1983 and 2000a, it is clear that there is no subject matter jurisdiction pursuant to 28 U.S.C. § 1343.

11

Plaintiff also cites "Title 5 701(sic) of the Administrative Procedure Act" (APA) as another cause of action[2]. However, the Plaintiff has not alleged any facts which establish that he is aggrieved or has sustained any injury as a result of the Secretary's actions which would entitle him to judicial review, even if he were not precluded from seeking such review by § 405(h). Also, the Supreme Court In **Califano v. Sanders**, 430 U.S. 99, 107 (1977), held that the APA does not afford an implied grant of subject matter jurisdiction permitting federal judicial review of agency action. This precedent was most recently reaffirmed by the Supreme Court in **Your Home Visiting Nursing Services, Inc. v. Shalala**, 525 U.S. 449 (1999).

This case should be dismissed because there is no remedy available for plaintiff. Even if there is jurisdiction to review any aspect of this case, and plaintiff overcomes all other objections raised by the Secretary, the relief which plaintiff requests is not available. Specifically, plaintiff prays that the court "enters Order by Writ of Mandamus for the Defendant to review and investigate complaint filed with Defendant under the rules and law-USC 42 13995dd, FCR 489.24 and 489.20."(sic). Plaintiff's Amended Complaint, p. 8.

The Ringer Court also addressed the issue of the extraordinary nature of mandamus relief by noting that the "common-law writ of mandamus, as codified in 28 U.S.C. § 1361 is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only **if the defendant owes him a clear nondiscretionary duty.**" Ringer, 466 U.S. at 615(emphasis added). See, also, **Your Home Visiting Nurses**, 525 U.S. at 456-457. Plaintiff has not pursued his remedies

---

[2] The pertinent provisions of 5 U.S.C. §§ 701-704 provide for judicial review of agency actions by a person suffering legal wrong . . . adversely affected or aggrieved by agency action **within the meaning of a relevant statute**, except if judicial review is precluded by statute or the agency action *is committed to agency discretion.* (emphasis added).

against the hospital nor has he alleged what nondiscretionary duty the Secretary owes to him in the instant matter. The Secretary does not owe any nondiscretionary duty to Plaintiff under any of the statutes recited as the bases for his lawsuit. Thus, the court could not lawfully order the Secretary to reinvestigate the case and there is no other relief available to plaintiff.. Even if the Secretary could be ordered to reinvestigate the case, she would not be obligated to find a violation where none was noted before. Thus, Plaintiff would not have obtained any relief as a result of such a n extraordinary remedy.

## CONCLUSION

Thus, for any or all of the reasons stated in this memorandum, the Secretary's MOTION TO DISMISS should be granted.

Respectfully submitted,

GUY A. WHITE
UNITED STATES ATTORNEY

CHARLES S. WHITE
Assistant United States Attorney
Florida Bar Number 394981
99 N.E. 4th Street, Suite 322
Miami, Florida 33131
Tel. (305) 961-9286
Fax. (305) 530-7139

        BRUCE R. GRANGER
        CHIEF COUNSEL - REGION IV

        GWENDOLYN L. JOHNSON
        ASSISTANT REGIONAL COUNSEL
        Office of the General Counsel
        United States Department of Health and
        Human Services
        61 Forsyth Street
        Suite 5M60
        Atlanta, GA  30303
        Tel: (404) 562-7827
        Fax: (404) 562-7855

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished by U.S. Mail on July 31st, 2000 to William H. Coyle, Plaintiff *pro se,* 711 S.E. 2nd Avenue, Fort Lauderdale, Florida 33316.

        By _____
           CHARLES S. WHITE
           Assistant United States Attorney

14

# ADDITIONAL ATTACHMENTS NOT SCANNED

PLEASE REFER TO COURT FILE